UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLONY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>        -v.-<br><br>SOUTHWEST MARINE & GENERAL INSURANCE<br>COMPANY,<br><br>        Defendant. | 22 Civ. 1590 (KPF) |
| SOUTHWEST MARINE & GENERAL INSURANCE<br>COMPANY,<br><br>        Third-Party Plaintiff,<br><br>        -v.-<br><br>CERTAIN UNDERWRITERS AT LLOYDS,<br>LONDON and ACCIDENT FUND INSURANCE<br>COMPANY OF AMERICA,<br><br>        Third-Party Defendants. | **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

        Pending before the Court are four motions for partial summary judgment

under Federal Rule of Civil Procedure 56 — comprising two pairs of cross-

motions — each seeking determinations of insurance coverage in connection

with two underlying personal injury actions.  The first pair of cross-motions is

brought by Defendant/Third-Party Plaintiff Southwest Marine & General

Insurance Company ("Southwest") and Third-Party Defendant Certain

Underwriters at Lloyds, London ("Underwriters"), pertaining to an underlying

action entitled *Keite Martinez Toribio* v. *Walter Schik, Inc.*, Index

No. 161371/2020 (Sup. Ct. N.Y. Cnty.) (the "Toribio Action"). The second pair of cross-motions is brought by Southwest and Third-Party Defendant Accident Fund Insurance Company of America ("Accident Fund"), pertaining to an underlying action entitled *Edivaldo Pereira Silva* v. *1 Park Row Development, LLC*, Index No. 510377/2020 (Sup. Ct. Kings Cnty.) (the "Silva Action").

Because the applicable law is the same, the Court will begin by setting forth that law. It will then detail the factual and procedural backgrounds, and the correlative coverage analyses, of the two sets of cross-motions. For the reasons set forth in the remainder of this Opinion, the Court finds no coverage owed by Underwriters to Southwest's insured in the Toribio Action, and coverage (at least from a duty to defend perspective) owed by Accident Fund on a primary, non-contributory basis to Southwest's insured in the Silva Action.

## APPLICABLE LAW

### A.   Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations, quotation marks, and emphasis omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

## B.    Interpretation of Insurance Contracts

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Porco* v. *Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (quoting *In re Ests. of Covert*, 97 N.Y.2d 68, 76 (2001) (internal quotation marks omitted)). Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp.* v. *Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted); *see also Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (internal quotation marks and citation omitted)).

"As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning[.]" *Gilbane Bldg. Co./TDX Constr. Corp.* v. *St. Paul Fire & Marine Ins. Co.*, 31 N.Y.3d 131, 135 (2018) ("*Gilbane II*") (quoting *Vigilant Ins. Co.* v. *Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008) (internal quotation marks omitted)). "If the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *White* v. *Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007) (quoting *Greenfield* v. *Philles Records*, 98 N.Y.2d 562, 570 (2002) (internal quotation marks omitted)). "If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer." *Id.*

## C.    The Duty to Defend

"The duties to defend and indemnify are separate and distinct; the former is a form of litigation insurance for the insured." *Barney Greengrass, Inc.* v. *Lumbermens Mut. Cas. Co.*, 445 F. App'x 411, 413 (2d Cir. 2011) (summary order) (internal quotation marks and citations omitted). Under New York law, "the duty of an insurer to defend its insured is 'exceedingly broad' and far more expansive than the duty to indemnify its insured." *High Point Design, LLC* v. *LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir. 2018) (quoting *Cont'l Cas. Co.* v. *Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993)); *accord Regal Constr. Corp.* v. *Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d 34, 37 (2010). "[T]he insurer's duty to provide a defense is invoked 'whenever the allegations in a complaint against

the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be.'" *High Point Design, LLC*, 911 F.3d at 95 (quoting *Seaboard Sur. Co.* v. *Gillette Co.*, 64 N.Y.2d 304, 310 (1984)).  Thus, "the general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy." *Int'l Bus. Machs. Corp.* v. *Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004).

An insurer must defend even if "facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered[.]" *Int'l Bus. Machs. Corp.* v. *Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 427 (2d Cir. 2002) (quoting *Fitzpatrick* v. *Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991) (internal quotation marks omitted)).  "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *High Point Design, LLC*, 911 F.3d at 95 (quoting *Town of Massena* v. *Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002) (internal quotation marks omitted)).

That said, "[t]he insurer's duty to defend is ... not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Sturges Mfg. Co.* v. *Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 74 (1975).  In other words, where an insurer's duty to defend turns on an unresolved factual dispute, "the duty to defend lasts only until the factual ambiguity is resolved in favor of the insurer." *Hugo Boss Fashions, Inc.* v. *Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir. 2001); *see also Avondale Indus., Inc.*

v. *Travelers Indem. Co.*, 774 F. Supp. 1416, 1425 (S.D.N.Y. 1991) (The "duty to defend continues until judicial determination, either in [the] underlying action or in [the] coverage action, of [the] issue relevant to coverage." (citing *Colon* v. *Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 10 (1985))).

## DISCUSSION

**A.    The Court Denies Southwest's Motion for Partial Summary Judgment, and Grants Underwriters' Cross-Motion for Partial Summary Judgment, With Respect to Coverage in the Toribio Action**

### 1.    Factual Background[1]

#### a.    The Toribio Underlying Action

The first coverage dispute arises, in part, from an underlying personal injury action known as the Toribio Action.  In the Toribio Action, Keite Martinez

---

[1]    The facts set forth in this section of the Opinion are drawn from Southwest's and Underwriters' submissions in connection with their cross-motions for partial summary judgment, as well as the Declaration of Steven A. Weiner (Dkt. #62 ("Weiner Toribio Decl.")) and the exhibits attached thereto.  In instances where the underlying document in an exhibit lacks page numbers, the Court cites to the page number supplied by this Court's Electronic Case Filing ("ECF") system.

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

For ease of reference, the Court refers to Southwest's memorandum of law in support of its motion for partial summary judgment as "SW Toribio Br." (Dkt. #84); to Underwriters' memorandum of law in opposition to Southwest's motion as "Under. Opp." (Dkt. #92); and to Southwest's reply memorandum of law as "SW Toribio Reply" (Dkt. #96).

The Court refers to Underwriters' memorandum of law in support of its motion for partial summary judgment as "Under. Br." (Dkt. #71); to Southwest's memorandum of law in opposition to Underwriters' motion as "SW Toribio Opp." (Dkt. #89); and to Underwriters' reply memorandum of law as "Under. Reply" (Dkt. #95).

Toribio ("Toribio") commenced an action against, *inter alia*, Kingsway Realty, LLC ("Kingsway") and Integrity Contracting, Inc. ("Integrity") seeking monetary damages for personal injuries sustained on a construction project located at 1601-1621 Kings Highway, Brooklyn, New York (the "Toribio Project").

Toribio's complaint alleges that Kingsway, the owner of the Toribio Project, retained Integrity to serve as the general contractor. (*See* Weiner Toribio Decl., Ex. A ("Toribio Complaint")). On January 3, 2018, Toribio slipped and fell from a ladder while performing construction work on the Toribio Project for subcontractor M.F. Electrical Service Co., Inc. ("MF Electrical"). (*See id.* ¶ 67). Toribio maintains that Kingsway and Integrity are liable for the accident under Section 240 of the New York Labor Law, or alternatively, that Kingsway's and Integrity's negligence proximately caused the accident. (*See id.* ¶¶ 69, 77).

Integrity commenced a third-party action against MF Electrical by filing a third-party summons and third-party complaint on or about February 4, 2021. (*See* Weiner Toribio Decl., Ex. C). The third-party complaint alleges that MF Electrical agreed to perform work on the Toribio Project under a written contract. (*See id.*). It further alleges that MF Electrical's negligence and/or breach of Section 240 of the New York Labor Law was a proximate cause of Toribio's accident. (*Id.* ¶ 12). The third-party complaint asserts claims for common-law and contractual indemnification, common-law contribution, and failure to procure insurance coverage. (*See generally id.*).

### b.     The Underwriters Policy

Underwriters issued a commercial general liability insurance policy to MF Electrical, which was effective from January 15, 2017, through January 15, 2018 (the "Underwriters Policy").  (*See* Weiner Toribio Decl., Ex. L).   The Underwriters Policy provides, in relevant part:

SECTION I – COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in Section III — Limits of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

8

      b.     This insurance applies to "bodily injury" and "property damage" only if:

         (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

         (2)    The "bodily injury" or "property damage" occurs during the policy period; contains a provision for additional insureds (the "AI Endorsement")[.]

(Weiner Toribio Decl., Ex. L at 12-13). The Underwriters Policy also contains an "Additional Insured — Owners, Lessees or Contractors — Automatic Status" endorsement (the "Underwriters AI Endorsement"), which provides:

> Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

(*Id.* at 35). In addition to the Underwriters AI Endorsement, the Underwriters Policy includes an "Additional Insured — Owners, Lessees or Contractors — Scheduled Person or Organization" endorsement (the "Underwriters AI Scheduled Endorsement"), which provides, in part:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Scheduled | Per written contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

> Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage[.]"

(*Id.* at 61-62).

Finally, to the extent relevant here, the Underwriters Policy contains a provision titled "Supplementary Payments — Coverages A and B" (the "Supplementary Payments Provision"), which states, in part:

> If [Underwriters] defend[s] an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", [Underwriters] will defend that indemnitee if all of the following conditions are met:
>
> (a)   The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
>
> * * *
>
> (d)   The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
>
> (e)   The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and
>
> (f)   The indemnitee:
>
>> (1)   Agrees in writing to:
>>
>>> (a)   Cooperate with us in the investigation, settlement or defense of the "suit";
>>>
>>> (b)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
>>>
>>> (c)   Notify any other insurer whose coverage is available to the indemnitee; and

(d)     Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)     Provides us with written authorization to:

(a)     Obtain records and other information related to the "suit"; and

(b)     Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

(Weiner Toribio Decl., Ex. L at 19-20).

### c.     The MF Electrical Subcontract with Integrity

For performance of work on the Toribio Project, MF Electrical entered into a subcontract with Integrity (the "MF Electrical Subcontract") on July 14, 2015.  The MF Electrical Subcontract included an indemnification requirement that stated, in part:

6.     INDEMNIFICATION

To the fullest extent permitted by law, the *Subcontractor* [MF Electrical] *agrees to Indemnify, defend and hold harmless the Contractor* [Integrity], their officers, directors, agents, employees, partners *and all parties required by prime contract* to be listed as additionally insured (hereafter collectively "indemnities") from any and all claims, suits, damages, liabilities, professional fees, including attorney's fees, cost, court costs, expenses and disbursements related to death, personal injuries or property damage (including loss of use thereof) brought or assumed against and of the

11

> indemnities by any person or firm, arising out of or in
> connection with or as a consequence of the performance
> of the Work of the Subcontractor under this agreement
> (contract), as well as any additional work, extra work,
> or add-on work, whether caused in whole or part by the
> Subcontractor including any subcontractors therefore
> and their employees.

(Weiner Toribio Decl., Ex. H at 12 (emphases added)).

### d.   The Prime Contract

The other potentially relevant contract to the Court's analysis is the

general contractor agreement between Kingsway and Integrity (the "Prime

Contract"), which states, in relevant part:

> [Integrity] shall be responsible to the Owner [Kingsway]
> for the acts and omissions of our employees,
> Subcontractors and their agents and employees, and
> other persons or entities performing portions of the
> Work for on behalf of Us or Our Subcontractors or
> anyone for whose acts We or they may be liable.  To the
> fullest extent permitted by law, *the General Contractor
> shall defend, indemnify and hold harmless the Owner* ....
> including, without limitation, all persons and entities
> identified as Additional Insureds in Article 13 above,
> and such others as the Owner may reasonably
> designate (hereinafter, "Indemnitees")[.]

(Weiner Toribio Decl., Ex. F-2 at 1 (emphasis added)).

### 2.   Procedural Background

Colony Insurance Company ("Colony"), Kingsway's general liability

insurer, commenced this action against Southwest by filing a complaint for

declaratory judgment on February 25, 2022.  (Dkt. #3 ("Compl.")).  Colony

seeks, *inter alia*, a declaration that Southwest, as the insurer of Integrity, is

required to defend and indemnify Kingsway in the Toribio Action on a primary

and non-contributory basis.  (*See generally id.*).  Southwest admits in its

Answer to the Complaint that it issued a commercial general liability policy to Integrity that was effective from June 17, 2017, to June 17, 2018.  (Dkt. #13 ("Answer")).

On April 15, 2022, Southwest, in turn, filed a third-party complaint against Underwriters, MF Electrical's general liability insurer, seeking (i) a declaration that *Underwriters* has a primary duty to defend and indemnify Kingsway and Integrity or, in the alternative, reimburse Southwest, should Southwest be obligated to reimburse Colony or to provide defense and indemnity to Kingsway and (ii) relief for breach of contract.  (Dkt. #15 ("TPC")). Southwest asserts that Kingsway retained Integrity as a general contractor for the Toribio Project and that Integrity entered into a subcontract agreement with MF Electrical.  (*See id.* ¶¶ 31, 32).

On June 17, 2022, Underwriters filed an answer to Southwest's third-party complaint and the case proceeded to discovery.  (Dkt. #38).  In a joint letter filed on January 19, 2023, the parties informed the Court that they anticipated filing motions for summary judgment seeking declaratory judgment as to insurance coverage.  (Dkt. #55).  The Court scheduled a pre-motion conference, which was duly held on January 26, 2023 (*see* January 26, 2023 Minute Entry), and, shortly thereafter, set a briefing schedule for the parties' anticipated motions (Dkt. #58).

On March 24, 2023, Underwriters filed its motion for partial summary judgment and accompanying papers seeking a declaration that it had no duty to defend or indemnify Kingsway.  (Dkt. #68-72).  That same day, Southwest

filed its cross-motion for partial summary judgment and accompanying papers, opposing Underwriters' motion and seeking declaratory judgment in its favor. (Dkt. #82-85).  On April 13, 2023, Southwest filed its opposition to Underwriters' motion (Dkt. #89), and Underwriters likewise filed its opposition to Southwest's motion (Dkt. #92).  On April 27, 2023, Underwriters filed its reply in further support of its motion (Dkt. #95), and Southwest filed its reply in further support of its motion (Dkt. #96).

### 3.   Analysis

Proceeding from the relevant policies and construction contracts, Underwriters seeks a declaration that it has no duty to defend or indemnify Kingsway in the Toribio Action.  For its part, Southwest opposes Underwriters' motion and seeks a declaration that (i) Underwriters has a duty to defend and indemnify Kingsway in the Toribio Action; (ii) Underwriters' coverage is primary and non-contributory; and (iii) Underwriters is obligated to reimburse Southwest for past defense costs and expenses and assume the defense obligation prospectively.[2]  For the reasons that follow, the Court finds that Kingsway does not qualify as an additional insured under the Underwriters Policy, and that Underwriters does not have a duty to defend or indemnify Kingsway in the Toribio Action.

---

[2]      Southwest originally also sought a declaration that Underwriters had a duty to defend and indemnify Integrity.  (*See* TPC ¶ 5).  However, Underwriters has since accepted Southwest's tender for defense as to Integrity.  (*See* Weiner Toribio Decl., Ex. O). Accordingly, the sole claim to be resolved is regarding any coverage of Kingsway.  (*See* SW Toribio Br. 4 ("Underwriters has accepted Southwest's tender for defense as to Integrity .... The sole remaining claim by Southwest against Underwriters relates to Southwest's claim that Underwriters is responsible for defense and indemnity of Colony's insured, [Kingsway].")).

### a. Kingsway Is Not an Additional Insured Under the Underwriters Policy

The parties' primary dispute turns on whether Kingsway qualifies as an "additional insured" under the Underwriters Policy.  Underwriters asserts it has no coverage obligation to Kingsway as an additional insured because Kingsway is not a party to the subcontract executed by Integrity and MF Electrical and, therefore, is not in privity of contract.  (Under. Br. 2).

"[I]t is well established that the party claiming insurance coverage bears the burden of proving entitlement, and … a party that is not named an insured or an additional insured on the face of the policy is not entitled to coverage." *Tribeca Broadway Assocs., LLC* v. *Mount Vernon Fire Ins. Co.*, 774 N.Y.S.2d 11, 13 (1st Dep't 2004).  "[W]hen determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from within the four corners of the policy itself." *Cincinnati Ins. Co.* v. *Harleysville Ins. Co.*, 709 F. App'x 71, 74 (2d Cir. 2017) (summary order) (quoting *77 Water St., Inc.* v. *JTC Painting & Decorating Corp.*, 50 N.Y.S.3d 471, 475 (2d Dep't 2017) (internal quotation marks omitted)).  New York courts have interpreted language in analogous additional insured provisions as requiring contractual privity between the insured and each organization seeking coverage as an additional insured under the relevant policy.  *See AB Green Gansevoort, LLC* v. *Peter Scalamandre & Sons, Inc.*, 961 N.Y.S.2d 3, 4 (1st Dep't 2013).  Conversely, if the putative additional insured has not entered into a written agreement with the named insured, there is no coverage, regardless of the named insured's other written commitments with

third parties.  *See Muss Dev. LLC* v. *Nationwide Ins. Co.*, No. 13 Civ. 4848 (RJD) (MDG), 2015 WL 6160240, at *6 (E.D.N.Y. Oct. 20, 2015); *see also Linarello* v. *City Univ. of N.Y.*, 774 N.Y.S.2d 517, 520 (1st Dep't 2004) (finding that even if construction manager were a third-party beneficiary of contracts requiring that it be named as an additional insured on subcontractors' insurance policy, "that would simply mean that [the construction manager] ha[d] standing to sue" subcontractors for failing to procure insurance as promised).

Here, Underwriters' additional insured policy is virtually identical to the policy language interpreted by the *AB Green* court.  961 N.Y.S.2d at 4.  The policy at issue in *AB Green* stated that an organization is added as an additional insured "when you and such organization have agreed in writing in a contract or agreement that such organization be added as an additional insured on your policy."  *Id.* (alterations omitted).  The *AB Green* court read the phrase "have agreed in writing" to mean that "[t]he policy does not provide that there only be some writing, but rather that there be a written contract between the named insured and the organization seeking coverage."  *Id.*  In other words, the policy explicitly required direct privity between the insured and any additional insureds.  *See also Zoological Soc. of Buffalo, Inc.* v. *Carvedrock, LLC*, No. 10 Civ. 35 (RJA), 2014 WL 3748545, at *7 (W.D.N.Y. July 29, 2014) (finding similar language "clearly and unambiguously require[d] that the named insured execute a contract with the party seeking coverage as an additional insured").

Similarly, the additional insured provision of the Underwriters Policy extends coverage to "any person or organization for whom you are performing operations when you and such person or organization *have agreed in writing in a contract or agreement* that such person or organization be added as an additional insured on your policy." (Weiner Toribio Decl., Ex. L at 35 (emphasis added)). Southwest has not produced any written contract or agreement between Kingsway and MF Electrical in which MF Electrical agreed to add Kingsway as an additional insured. Given that the Underwriters Policy explicitly requires direct privity between the insured and any additional insureds, and that it is undisputed that no privity of contract exists, Underwriters has no duty to provide Kingsway with coverage as an additional insured.[3]

Contrary to Southwest's assertion, Kingsway does not qualify as an additional insured under the Underwriters AI Scheduled Endorsement. (SW Toribio Br. 18-19). By its plain terms, the endorsement affords coverage only to persons or organizations that are specifically listed on the endorsement

---

[3]     Southwest argues that because Kingsway was an intended third-party beneficiary of the subcontract between MF Electrical and Southwest's insured, Integrity, the functional equivalent of privity exists. (SW Toribio Opp. 6-8). That argument has been explicitly considered and rejected by New York courts, which have found that a third-party beneficiary to a contract or agreement cannot qualify as an additional insured under the language of provisions virtually identical to the one at issue here. *See Muss Dev. LLC* v. *Nationwide Ins. Co.*, No. 13 Civ. 4848 (RJD) (MDG), 2015 WL 6160240, at *6 (E.D.N.Y. Oct. 20, 2015) (finding the fact that owner was "named as a third-party beneficiary" to the subcontract "insufficient to confer coverage" under additional insured provision language requiring the named insured execute a contract with the party seeking coverage as an additional insured (citation omitted)); *accord Cincinnati Ins. Co.* v. *Harleysville Ins. Co.*, 709 F. App'x 71, 73 (2d Cir. 2017) (summary order) (collecting state and federal cases).

itself.  (*See* Weiner Toribio Decl., Ex. L at 61 (stating "Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule")).  As Kingsway is not listed on the schedule (and there is no "written contract" between Kingsway and MF Electrical), Kingsway does not qualify as an additional insured thereunder.  *See, e.g.*, *Sixty Sutton Corp.* v. *Illinois Union Ins. Co.*, 825 N.Y.S.2d 46, 48 (1st Dep't 2006) ("[T]he four corners of an insurance agreement govern who is covered and the extent of coverage[.]"); *see also Sumner Builders Corp.* v. *Rutgers Cas. Ins. Co.*, 955 N.Y.S.2d 568, 569-70 (1st Dep't 2012) (finding defendant insurer entitled to summary judgment where unambiguous language of policy comported with defendant's position that plaintiff was not covered under the policy, either as a named or additional insured).

### b. Integrity's Contractual Obligation to Defend and Indemnify Kingsway Does Not Confer Coverage

Kingsway similarly has no independent right to coverage, as Southwest asserts, as a consequence of Integrity's contractual obligations to defend and indemnify Kingsway.  (SW Toribio Br. 19).  As an initial matter, to the extent that Southwest argues that Integrity's contractual obligations under the Prime Contract to defend and indemnify Kingsway were incorporated and thus passed through to MF Electrical via its subcontract agreement with Integrity, New York courts have long held that a contractual indemnitee is not an insured, and does not have the rights of an insured under a commercial general liability policy.  *See Jefferson* v. *Sinclair Ref. Co.*, 10 N.Y.2d 422, 427 (1961); *see also Inner City Redev. Corp.* v. *Thyssenkrupp El. Corp.*, 913 N.Y.S.2d 29, 30 (1st

Dep't 2010) (noting that a defendant's contractual obligation "is separate and distinct" from an insurer's obligations under the policy).  That is because although a contract may require the named insured to hold harmless and indemnify the indemnitee, where the indemnitee is not listed as an additional insured under the related policy, there are no rights and obligations as between the indemnitee and the insurance carrier.  *See Boyle* v. *City of New York*, 655 N.Y.S.2d 23, 24 (1st Dep't 1997) (noting that additional insured status is distinct from contractual indemnity).  Therefore, the contractual agreements to indemnify do not independently obligate Underwriters to provide coverage to Kingsway in the underlying action.  *See, e.g.*, *Hargob Realty Assoc., Inc.* v. *Fireman's Fund Ins. Co.*, 901 N.Y.S.2d 657, 660 (2d Dep't 2010) ("[S]tatus as an indemnitee does not operate to confer upon it status as an additional insured[.]"); *Central Park Studios, Inc.* v. *Michael Slosberg*, 959 N.Y.S.2d 88, 92 (Sup. Ct. N.Y. Cnty. 2012) ("the fact that the [named insured] owe[s] contractual indemnification to [indemnitees] does not confer additional insured status.").

Next, Southwest asserts that Integrity's contractual obligation to defend and indemnify Kingsway under the Prime Contract "give[s] rise to damages to Integrity that are covered under the Underwriters Insuring provision."  (SW Toribio Br. 19).  However, Underwriters' Insuring Agreement states in relevant part:

> [Underwriters] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

19

(Weiner Toribio Decl., Ex. L at 12).  Under the plain terms of the provision, Southwest cannot establish that the Insuring Agreement of the Underwriters Policy has been triggered.  The Insuring Agreement states that Underwriters will only "pay those sums that the insured becomes *legally obligated* to pay as damages."  (*Id.* (emphasis added)).  Since there has been no determination that Integrity is "legally obligated" to pay damages on behalf of Kingsway, Integrity's obligation has not yet been realized.  *See Westchester Fire Ins. Co.* v. *Utica First Ins. Co.*, 839 N.Y.S.2d 91, 93 (2d Dep't 2007) ("When insurers agree to pay all sums which an insured becomes 'legally obligated to pay as damages,' there must be an establishment of legal liability for payment of damages to trigger the insurers' duty to indemnify the insured."); *see also United Nat. Ins. Co.* v. *Scottsdale Ins. Co.*, No. 08 Civ. 5255 (FB) (SMG), 2011 WL 839397, at *3 (E.D.N.Y. Mar. 4, 2011) (finding no legal obligation had arisen under insuring contract provision requiring insurer to "pay those sums that the insured becomes legally obligated to pay as damages" because liability remained contingent on pending tort claims), *aff'd*, 452 F. App'x 77 (2d Cir. 2012) (summary order); *Jefferson*, 10 N.Y.2d at 427 (finding claim against the insurer "premature" because insured had "not yet become legally obligated to pay anything").

### c. The Supplementary Payments Provision of the Underwriters Policy Does Not Confer Coverage

Finally, Southwest asserts that the Supplementary Payments Provision of the Underwriters Policy confers coverage on Kingsway.  (SW Toribio Br. 19-20).

Under that provision, Underwriters agrees to provide a defense to an indemnitee of its insured if certain conditions are met.[4]  Specifically, the provision states, *inter alia*, that:

> If [Underwriters] defend[s] an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", [Underwriters] will defend that indemnitee if all of the following conditions are met:
>
> ****
>
> (d)   The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee.
>
> So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

(Weiner Toribio Decl., Ex. L at 19-20).

As a preliminary matter, the Court reiterates that, under New York law, "[c]ourts bear the responsibility of determining the rights and obligations of parties under insurance contracts based on the specific language of the policies[.]"  *Sanabria* v. *Am. Home Assur. Co.*, 68 N.Y.2d 866, 868 (1986) (quotation marks and citation omitted).  "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a

---

[4]     This provision does not create a duty to indemnify, and Southwest does not contend otherwise.

question of law for the court." *Vigilant Ins. Co.* v. *Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008) (quotation marks omitted).

The plain, unambiguous terms of the Supplementary Payments Provision make clear that Integrity qualifies as "an insured." (Weiner Toribio Decl., Ex. L at 19).[5]  Further, the terms make clear that Kingsway qualifies as "an indemnitee of the insured ... named as a party to the 'suit.'"  (*Id.*).[6]

The plain, unambiguous terms of the Supplementary Payments Provision also make clear that it is only triggered "[s]o long as [certain] conditions are met[.]"  (Weiner Toribio Decl., Ex. L at 20).  Accordingly, if Southwest seeks coverage for Kingsway under the provision, it must demonstrate, among other things, that "no conflict appears to exist" between the interests of the insured (Integrity) and its indemnitee (Kingsway) in defending the Toribio Action.  *See Douglas* v. *Mister Sports*, 67 N.Y.S.3d 629, 630-31 (1st Dep't 2018) (affirming the conclusion that a would-be third-party indemnitee was "not entitled to coverage in the underlying action ... because the conditions for coverage under the supplementary payments provision of the policy ha[d] not been satisfied,"

---

[5]    The Underwriters Policy defines the word "insured" as "any person or organization qualifying as such under Section II — Who Is An Insured."  (Weiner Toribio Decl., Ex. L at 12).  Section II is amended by the Underwriters AI Endorsement to include "any person or organization" that has "agreed in writing in a contract or agreement that such person or organization be added as an additional insured."  (*Id.* at 35).  Here, Underwriters does not dispute that it has a duty to defend Integrity as an additional insured (*see* Weiner Toribio Decl., Ex. O), as there is a subcontract agreement between Integrity and MF Electrical adding Integrity as an additional insured (*see* Weiner Toribio Decl., Ex. H at 12 (stating that the "Subcontractor agrees to Indemnify, defend and hold harmless the Contractor" and requires the subcontractor to procure insurance that lists Integrity "as [an] additional insured[]")).

[6]    The parties do not dispute that Kingsway is a contractual indemnitee of Integrity (*see* Weiner Toribio Decl., Ex. F-2 at 1), and is named as a defendant in the Toribio Complaint (*see* Weiner Toribio Decl., Ex. A).

where one such condition was "that there be no conflict between the insured's interests and the indemnitee's interests"); *see also Western Heritage Ins. Co.* v. *Century Sur. Co.*, 32 F. Supp. 3d 443, 452 (S.D.N.Y. 2014) (explaining that "[i]f any of the conditions [of a supplementary payments provision] are not met, the provision no longer applies").[7]

Southwest has failed to meet that burden.  While it "is easy to see why the commonality of interests of an insured and its indemnitee sued by the same plaintiff for the same wrong would motivate an insurer to agree to provide a defense for both," *Scottsdale Ins. Co.*, 2011 WL 839397, at *3, here, there is no unity of interest between Kingsway and Integrity.  Toribio's complaint alleges that Kingsway and Integrity, as the property owner and construction manager, respectively, were negligent in "their ownership, operation, maintenance, management and control of the premises." (Weiner Toribio Decl., Ex. A ¶ 69).  Accordingly, liability may be apportioned in some fashion between

---

[7]     While it attempts to meaningfully engage with the conditions of Supplementary Payments Provision, Underwriters does not address Southwest's argument that Kingsway is an indemnitee of *Integrity*, thereby potentially obligating Underwriters, in its defense of Integrity, to pay for the defense of Kingsway.  Instead, in its opposition, Underwriters states that Southwest "has not demonstrated that Kingsway is an indemnitee of *MF Electrical*" and that Southwest "cannot demonstrate that there are no conflicts between Kingsway and *MF Electrical*." (Under. Opp. 9-11 (emphases added)).  Even if the Provision only applied to the named insured, MF Electrical, Southwest still has not demonstrated that "no conflict" of interests exists between MF Electrical and Kingsway.  Indeed, MF Electrical's defense of the third-party complaint filed against it by Integrity is predicated, in part, on establishing that Kingsway and Integrity, as the property owner and construction manager, respectively, were each proximately negligent for Toribio's accident.  (*See* Weiner Toribio Decl., Ex. C).  *See United Nat. Ins. Co.* v. *Scottsdale Ins. Co.*, No. 08 Civ. 5255 (FB) (SMG), 2011 WL 839397, at *3 (E.D.N.Y. Mar. 4, 2011) (concluding that supplementary payments provision was not triggered because there was no commonality of interest where an insured was not named as a defendant in the underlying suit, but rather was named as a third-party defendant), *aff'd*, 452 F. App'x 77 (2d Cir. 2012) (summary order).

the two entities based on their purported active negligence or wrongdoing, or could fall entirely on one and not the other, thus affecting each party's litigation strategy in defending the Toribio Action.  Furthermore, in the underlying action, Kingsway asserts cross-claims against Integrity seeking damages for, *inter alia*, contractual indemnification and breach of contract. (*See* Weiner Toribio Decl., Ex. D ¶¶ 27-30).  Therefore — even assuming *arguendo* that it has met all of the other Supplementary Payment Provision conditions — Southwest has failed to satisfy condition (d) and thus trigger the provision.  *See Mister Sports*, 67 N.Y.S.3d at 630 (finding supplementary payment provision not triggered where conflict between relevant parties was "evident" given the allegations in the underlying action); *see also Travelers Cas. Ins. Co. of Am.* v. *Blizzard Busters Snowplowing Corp.*, No. 21 Civ. 8220 (KMK), 2023 WL 8543447, at *7 (S.D.N.Y. Dec. 11, 2023) (finding supplementary payment provision was not triggered where entities asserted counterclaims for indemnification and contribution against one another in the underlying action and thus generated an "'incompatibility between' [the entities'] interests" (quoting *Conflict of Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019))).[8]

---

[8]     Southwest's argument to the contrary is unavailing.  Southwest argues that because the Toribio Complaint brings a claim against Kingsway under Section 240 of the New York Labor Law, *i.e.*, a strict liability statute, no conflict of interest can exist.  (SW Toribio Reply 5).  As stated above, however, Toribio's first cause of action is for common-law negligence, which is not a strict liability standard, and thus liability can be apportioned between entities.  (*See* Weiner Toribio Decl., Ex. A ¶ 69 (stating the "accident and subsequent injuries sustained by this Plaintiff were caused solely through the negligence of the Defendants")).

For all of the foregoing reasons, this Court concludes that Underwriters has no duty to defend — and, by extension, no duty to indemnify — Kingsway. *See, e.g.*, *Ogden Corp.* v. *Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991) ("[Where] there is no duty to defend, there also is no corresponding duty to indemnify.").

**B.    The Court Grants in Part Southwest's Motion for Summary Judgment, and Denies Accident Fund's Cross-Motion for Summary Judgment, With Respect to Coverage for the Silva Action**

**1.    Factual Background**[9]

**a.    The Silva Underlying Action**

The Court turns now to the second set of cross-motions for summary judgment.  In the Silva Action, plaintiff Edivaldo Pereira Silva ("Silva") commenced an action against, *inter alia*, 1 Park Row Development, LLC ("Park Row") and MJM Associates Construction, LLC ("MJM") seeking monetary damages for personal injuries sustained on a construction project located at 1 Park Row, New York, New York (the "Silva Project").  (*See* Weiner Silva Decl., Ex. A ("Silva Complaint"), D ("Silva Amended Complaint")).

---

[9]    The facts set forth in this section of the Opinion are drawn from Southwest's and Accident Fund's submissions in connection with their cross-motions for summary judgment.  The Court primarily sources facts from the Declaration of Steven A. Weiner (Dkt. #61 ("Weiner Silva Decl.")) and the exhibits attached thereto.

For ease of reference, the Court refers to Southwest's memorandum of law in support of its motion for summary judgment as "SW Silva Br." (Dkt. #77); to Accident Fund's memorandum of law in opposition to Southwest's motion as "AF Opp." (Dkt. #94); and to Southwest's reply memorandum of law as "SW Silva Reply" (Dkt. #97).

The Court refers to Accident Fund's memorandum of law in support of its motion for summary judgment as "AF Br." (Dkt. #80); to Southwest's memorandum of law in opposition to Accident Fund's motion as "SW Silva Opp." (Dkt. #87); and to Accident Fund's reply memorandum of law as "AF Reply" (Dkt. #98).

On or about May 26, 2020, Silva slipped and fell from a height at the

construction site while employed by subcontractor Pasenti, Inc. ("Pasenti").[10]

(*See* Weiner Silva Decl., Ex. A ¶ 207).  Silva's complaint alleges that Park Row,

the owner of the property on which the Silva Project was located, and MJM, the

construction manager of the Silva Project, were negligent and violated Section

240 of the New York Labor Law, causing his alleged injuries.  (*See id.* ¶ 210).

Shortly after answering Silva's complaint, MJM brought a third-party

complaint against KJE, alleging that it had entered into a subcontract with

MJM to perform work on the Silva Project.  (*See* Weiner Silva Decl., Ex M).  On

March 8, 2021, MJM also filed an amended third-party complaint against KJE

and Pasenti (the "MJM Amended Third-Party Complaint"), alleging that their

operations were so intermingled as to render them mutually liable for Silva's

claims.  (*See* Weiner Silva Decl., Ex. K).  To the extent relevant here, the MJM

Amended Third-Party Complaint alleges that, at all relevant times, Pasenti

(i) was "present at the premises at 1 Park Row, New York, New York";

(ii) "controlled," "supervised," and "managed the work" that Silva was allegedly

engaged in at the premises; (iii) "was responsible for maintaining and did

maintain the premises"; and (iv) "was responsible for site safety."  (*Id.* ¶¶ 36-

---

[10]    The parties dispute whether Silva was employed by Pasenti or KJE Construction
Services Inc. ("KJE"), another subcontractor, at the time of the alleged accident.
(*Compare* SW Silva Br. 4 ("Mr. Silva was an employee of Pasenti"), *with* AF Opp. 8
("Southwest argues that ... Mr. Silva did not sue 'his employer' Pasenti")).  For the
purposes of adjudicating the instant cross-motions, however, this dispute is immaterial
and need not be resolved.  The MJM Amended Third-Party Complaint on which the
Court's analysis is based alleges that Pasenti was Silva's employer.  (*See* Weiner Silva
Decl., Ex. K).

41).  The complaint also incorporates certain facts set forth in the Silva

Complaint.  (*See id.* ¶¶ 23-27).

### b.    The Accident Fund Policy

Accident Fund is the general commercial liability insurer for Pasenti.

The relevant portions of its insurance coverage (the "Accident Fund Policy"),

state:

> SECTION I - COVERAGES
>
> 1.    Insuring Agreement
>
> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> 2.    Exclusions
>
>           * * * *
>
> e.    Employers Liability
>
> "Bodily injury" to:
>
> (1)    An "employee" of the insured arising out of and in the course of:
>
> (a)    Employment by the insured, or;
>
> (b)    Performing duties related to the conduct of the insured's business
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages.

> This exclusion does not apply to liability assumed by the insured under an "insured contract".

(*See* Weiner Silva Decl., Ex. V at 5-6).

The Accident Fund Policy also contains an "Additional Insured — Owners, Lessees or Contractors — Scheduled Person or Organization" endorsement (the "AF AI Endorsement"), which provides, in relevant part:

> Who Is an Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury caused, in whole or in part, by:
>
> Your acts or omissions; or the acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Weiner Silva Decl., Ex. V at 28).  The schedule on the endorsement (reproduced below) lists the additional insured person or organization "[w]here required by written contract, signed and executed prior to loss."  (*Id.* at 30).

### SCHEDULE OF CG 20 10 04 13

| Name Of Additional Insured Persons(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| Where required by written contract, signed and executed prior to a loss. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Finally, the Accident Fund Policy includes an "Other Insurance" provision under Section IV — Commercial General Liability Conditions, which states, in relevant part:

a.    Primary Insurance

*This insurance is primary except when Paragraph b below applies.* If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

b.    Excess Insurance

(1)    This insurance is excess over:

* * * *

(b)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations … for which you have been added as an additional insured.

(Weiner Silva Decl., Ex. V at 16 (emphasis added)).  Accident Fund's "other insurance" provision is expressly modified by the "Primary and Non-Contributing Insurance" endorsement, which states, in part:

| Name of Additional Insured Person(s) or Organization(s): | Location(s) of Covered Operations |
|---|---|
| Where required by written contract, executed and signed, prior to a loss. | |

Notwithstanding the provisions of subparagraphs a, b, and c of [Section IV Commercial General Liability Conditions] paragraph 4, with respect to the Entity shown above, it is understood and agreed that in the event of a claim or "suit" arising out of the Named Insured's negligence, this insurance shall be primary and any other insurance maintained by the Entity above shall be excess and non-contributory.

29

(*Id.* at 54).

### c.     The MJM and Pasenti Subcontract Agreements

MJM entered into several subcontracts with Pasenti concerning different work on the Silva Project.  As relevant here, these agreements include contractual obligations by Pasenti to defend and indemnify MJM and Park Row for "contract related work" at 1 Park Row, New York, New York, on a primary, non-contributory basis.  (*See, e.g.*, Weiner Silva Decl., Ex. F at 1).  For instance, an agreement executed May 21, 2020 — excerpted below — includes an "Indemnification & Hold Harmless" provision that requires Pasenti to indemnify and hold harmless various non-parties and MJM and Park Row, defined as "Additional Insureds."  (*Id.*).

> Indemnification & Hold Harmless
>
> To the fullest extent permitted by law, Subcontractor [Pasenti] shall indemnify and hold … MJM ASSOCIATES CONSTRUCTION LLC [and] 1 PARK ROW DEVELOPMENT … their affiliates, principals, partners, members, stockholders, officers, directors, trustees, parents, subsidiaries, agents, employees, servants, successors and assigns (collectively, the "Additional Insureds") harmless from and against any and all claims, causes of action, suits … arising from the acts, errors or omissions or violation of law of Subcontractor … while on or near the project, or while performing contract related work, and whether or not it is alleged that the Additional Insureds in any way contributed to the alleged wrongdoing or are liable due to a non-delegable duty.

(*Id.*).  The other subcontract agreements between MJM and Pasenti contain identical "Indemnification & Hold Harmless" provisions.  (*See, e.g.*, Weiner Silva Decl., Ex. H-J).

### 2. Procedural Background

Colony, Park Row's general liability insurer, commenced this present action against Southwest by filing a complaint for declaratory judgment on February 25, 2022. (Dkt. #3). This time, Colony seeks, *inter alia*, a declaration that Southwest, as the insurer of MJM and Veracity, is required to defend and indemnify Park Row in the Silva Action on a primary and non-contributory basis. (*See generally id.*). On April 15, 2022, Southwest commenced a third-party complaint against Accident Fund seeking a declaration that Accident Fund has a primary duty to defend and indemnify MJM and Park Row and reimburse Southwest and Colony for past defense costs and expenses. (Dkt. #15). On April 27, 2022, Southwest accepted Colony's tender for defense as to Park Row, subject to a reservation of its rights. (*See* Weiner Silva Decl., Ex. W at 2).

On June 3, 2022, Accident Fund filed an answer to Southwest's third-party complaint and the case proceeded to discovery. (Dkt. #37). In a joint letter filed January 19, 2023, the parties informed the Court that they anticipated filing motions for summary judgment. (Dkt. #55). The Court scheduled a pre-motion conference, which was held on January 26, 2023 (*see* January 26, 2023 Minute Entry), and, shortly thereafter, set a briefing schedule for the parties' anticipated motions (Dkt. #60).

On March 24, 2023, Accident Fund filed its motion for summary judgment and accompanying papers seeking a declaration that it has no duty to defend or indemnify MJM or Park Row. (Dkt. #73-76, 80). That same day,

Southwest filed its cross-motion for partial summary judgment and accompanying papers, opposing Accident Fund's motion and seeking its own declaratory judgment.  (Dkt. #77-79).  On April 13, 2023, Southwest filed its opposition to Accident Fund's motion.  (Dkt. #87).  The next day, Accident Fund filed its opposition to Southwest's motion.  (Dkt. #94).  On April 27, 2023, Accident Fund filed its reply in further support of its motion (Dkt. #98), and Southwest filed its reply in further support of its motion (Dkt. #97).

### 3.   Analysis

Accident Fund seeks a declaration that it has no duty to defend or to indemnify MJM or Park Row in the Silva Action.  In its cross-motion for summary judgment, Southwest opposes Accident Fund's motion and seeks a declaration that (i) Accident Fund has a duty to defend and indemnify MJM and Park Row in the Silva Action; (ii) Accident Fund's coverage obligations are primary and non-contributory; and (iii) Accident Fund has an obligation to reimburse Southwest for past defense costs and expense and assume the defense obligation prospectively.[11]

---

[11]   Southwest also seeks a declaration that Accident Fund has a duty to defend and indemnify Veracity.  (*See* SW Silva Br. 22 ("Accident Fund is obligated to:  defend and indemnify ... Veracity.")).  Accident Fund argues that Southwest offers no evidence to show that Veracity was named as an additional insured in Pasenti's subcontracts.  (*See* AF Opp. 4 & fn.1, 13).  Indeed, in its summary judgment briefing, Southwest does not present any evidence that Veracity was an additional insured under Accident Fund's insurance policy.  (*See generally* SW Silva Br.).  In fact, Southwest, in its Third-Party Complaint, does not request declaratory relief as to Accident Fund's duty to defend and indemnify Veracity.  (*See generally* TPC).  Accordingly, the Court denies Southwest's motion with respect to Veracity.  *See Tribeca Broadway Assocs., LLC* v. *Mount Vernon Fire Ins. Co.*, 774 N.Y.S.2d 11, 13 (1st Dep't 2004) ("[I]t is well established that the party claiming insurance coverage bears the burden of proving entitlement[.]").

For the reasons that follow, the Court finds that MJM and Park Row qualify as additional insureds under the Accident Fund Policy, and that there is a reasonable possibility of coverage in the Silva Action that triggers Accident Fund's duty to defend.  The Court also finds that Accident Fund's duty to defend MJM and Park Row is primary and non-contributory.  Finally, the Court reserves judgment on Accident Fund's duty to indemnify MJM and Park Row because liability has not yet been assigned in the Silva Action.

### a. MJM and Park Row Qualify as Additional Insureds Under the Accident Fund Policy

The parties' dispute turns on whether MJM and Park Row each qualify as an "additional insured," which depends, in turn, on whether their potential liability in the Silva Action was "caused, in whole or in part, by" Pasenti's "work" for MJM or Park Row.  (Weiner Silva Decl., Ex. V at 28).

"[W]hen determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from within the four corners of the policy itself." *Cincinnati Ins. Co.*, 709 F. App'x at 74 (quoting *77 Water St., Inc.*, 50 N.Y.S.3d at 475 (internal quotation marks omitted)).  Here, the AF AI Endorsement provides coverage to an additional insured "[w]here required by written contract, signed and executed prior to a loss."  (Weiner Silva Decl., Ex. V at 30).  Coverage is limited, however, to liability proximately caused "in whole or in part" by Pasenti or "the acts or omissions of those acting on [its] behalf" in connection with its ongoing operations under its subcontract.  (*Id.* at 28).  "[W]here an insurance policy is restricted to liability for any bodily injury

'caused ...' by the 'acts or omissions' of the named insured," as here, "the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co.* v. *NYC Transit Auth.*, 29 N.Y.3d 313, 317 (2017). "It is sufficient that there be a 'reasonable possibility' that [the named insured]'s acts or omissions were the proximate cause of the injury." *Zurich Am. Ins. Co.* v. *XL Ins. America, Inc.*, 547 F. Supp. 3d 381, 399 (S.D.N.Y. 2021).

There is no dispute that there exists a "written contract, signed and executed prior to a loss" by Pasenti that contractually indemnifies and holds harmless MJM and Park Row as "additional insureds." (*See, e.g.*, Weiner Silva Decl., Ex. F at 1 (defining MJM and Park Row as "Additional Insureds" under an indemnification and hold harmless provision)). Accident Fund disputes, however, that the underlying accident was caused "in whole or in part" by the "acts or omissions" of Pasenti in connection with its subcontract. (AF Br. 20-21). Indeed, Accident Fund maintains that coverage is precluded because the underlying pleadings do not allege that "Pasenti's subcontract work was involved in any way with plaintiff's accident." (*Id.*).

In point of fact, the third-party complaint filed by MJM against Pasenti suggests a reasonable possibility that the accident occurred in the course of Pasenti's work under its contracts with MJM. Specifically, the MJM Amended Third-Party Complaint alleges that, *at all relevant times*, Pasenti was "present" at the job site, "controlled the work" that Silva was engaged in, and was "responsible for maintaining" the premises and "site safety." (*See* Weiner Silva Decl., Ex. K ¶¶ 36-41). Thus, the pleadings from the Silva Action, taken as

34

true, assert that Pasenti's acts or omissions contributed to Silva's accident. See *Fitzpatrick*, 78 N.Y.2d at 63 ("It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though the facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.").

Contrary to Accident Fund's assertions, the so-called "four corners" rule applies even when the allegations to be examined are set forth in third-party complaints, as they are here. *See N.Y. Marine & Gen. Ins. Co.* v. *Travelers Prop. Cas. Co. of Am.*, 632 F. Supp. 3d 303, 308 (S.D.N.Y. 2022) (stating that a court can consider the "facts that are pleaded" in an underlying third-party complaint to determine if they "suggest a reasonable possibility of coverage" (quoting cases) (emphasis omitted)); *see also N.Y.C. Transit Auth.* v. *Aetna Cas. & Sur. Co.*, 615 N.Y.S.2d 709, 711 (2d Dep't 1994) ("We agree with the [New York] Supreme Court that the allegations of the third-party complaint, which incorporated the complaint in the underlying action, sufficiently set forth a claim that may reasonably be said to fall within the policy's coverage.").

Accordingly, MJM and Park Row qualify as additional insureds under the Accident Fund Policy and Accident Fund's duty to defend is triggered because there is a reasonable possibility that Pasenti's acts or omissions with regards to workplace conditions and safety caused the alleged accident. *See Hanover Ins. Co.* v. *Cowan*, 568 N.Y.S.2d 115, 116 (2d Dep't 1991) ("[I]f the insurer is to be relieved of a duty to defend, it must demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the

exclusions of the policy and that the allegations are subject to no other interpretation."); *see also Allianz Ins. Co.* v. *Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) ("[A]n insurer is relieved of the duty to defend only if there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." (internal quotation marks and citation omitted)).

### b.     Accident Fund's Coverage of MJM and Park Row Is Primary and Non-Contributory[12]

Accident Fund argues in the alternative that if it is held to be obligated to defend Park Row, it should participate in equal shares with its insurers, Colony and Southwest.[13]  The Court disagrees.

"Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective other insurance clauses." *Charter Oak Fire Ins. Co.* v. *Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 327 (S.D.N.Y. 2020) (quoting *Sport Rock Int'l* v. *Am. Cas. Co.*, 878 N.Y.S.2d 339 (1st Dep't 2009) (internal quotation marks omitted)).  An "other insurance" clause limits an insurer's liability where other insurance may cover the same loss.

---

[12]     As an initial matter, Accident Fund does not appear to dispute that its coverage is primary and non-contributory as to MJM.  (*See* AF Opp. 15-17).  The remaining issue, therefore, is the coverage priority for Park Row.

[13]     Colony alleges that Southwest has a duty to defend and indemnify Park Row on a primary and non-contributory basis.  (*See* Compl. ¶¶ 51-53).  Southwest has agreed to defend Park Row in the underlying action.  (*See* Weiner Silva Decl., Ex. W at 2).  Accordingly, the relevant insurance policies here are Southwest's and Accident Fund's.

*Sport Rock Int'l*, 878 N.Y.S.2d at 344.  This may be accomplished by providing that the insurance provided by the policy is excess to the insurance provided by other policies, in which case the "other insurance" clause is known as an excess clause.  *Id.*

In this case, the applicable "other insurance" clause of the Southwest Policy is an excess clause.  Specifically, Southwest Policy's "other insurance" provision provides as follows:

> 4.   Primary Insurance
>
> *This insurance is primary except when Paragraph b below applies.*  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
>    b.  Excess Insurance
>
>        (1)   This insurance is excess over:
>
> * * * *
>
>              (b)   Any other primary insurance available to you covering liability for damages arising out of the premises or operations … for which you have been added as an additional insured.

(*See* Weiner Silva Decl., Ex. Y-3 at 7 (emphasis added)).  Paragraph b of the policy explains that Southwest's coverage is "excess over" "[a]ny other primary insurance available … for which [and insured] ha[s] been added as an additional insured."  (*Id.*).

The "other insurance" provision of the Accident Fund Policy is located at Paragraph 4 of Section IV, titled "Commercial General Liability Conditions,"

and contains similar language as Southwest Policy's "other insurance"
provision.  (*See* Weiner Silva Decl., Ex. V at 16).  However, Accident Fund's
"other insurance" provision is expressly modified by a "Primary and Non-
Contributing Insurance" endorsement.  (*See id.* at 54 (stating "the following is
added to Section IV — Commercial General Liability Conditions, Paragraph 4)).
The endorsement states:

> Notwithstanding the provisions of subparagraphs a, b,
> and c of [Section IV Commercial General Liability
> Conditions] paragraph 4, with respect to the [additional
> insureds] shown above, it is understood and agreed that
> in the event of a claim or "suit" arising out of the Named
> lnsured's negligence, this insurance shall be primary
> and any other insurance maintained by the [additional
> insureds] above shall be excess and non-contributory.

(*Id.*).

As previously discussed, there is a reasonable possibility that the
underlying claim arises out of Pasenti's negligence.  Further, the subcontract
agreements between Pasenti and MJM define Park Row as an "additional
insured" and require that the mandated Accident Fund coverage be primary
and non-contributory.  Accordingly, giving effect to (i) the Southwest Policy's
excess "other insurance" provision and (ii) the Accident Fund Policy's primary
and non-contributing insurance endorsement, Southwest's coverage of Park
Row is excess to Accident Fund's additional insured coverage.  Hence,
Southwest's obligation to defend Park Row in the Silva Action will not be
triggered until Accident Fund's coverage under its policy has been exhausted or
otherwise terminated.  In addition, Accident Fund must reimburse Southwest

for past defense costs and expenses and must assume Park Row's defense obligation prospectively.

> ### c. The Court Reserves Judgment on Accident Fund's Duty to Indemnify MJM and Park Row

In contrast to the duty to defend, the duty to indemnify "turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts." *Travelers Prop. Cas. Corp.* v. *Winterthur Int'l*, No. 02 Civ. 2406 (SAS), 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002). "Where the facts on which the Court's decision depends have yet to unfold, a declaratory judgment action is 'not currently a justiciable and ripe controversy[.]'" *Id.* (quoting *Certain Underwriters at Lloyd's, London* v. *St. Joe Minerals Corp.*, 90 F.3d 671, 676 (2d Cir. 1960)); *see also Lafarge Canada Inc.* v. *Am. Home Assurance Co.*, No. 15 Civ. 8957 (RA), 2018 WL 1634135, at *5 (S.D.N.Y. Mar. 31, 2018) ("[C]ourts regularly require the existence of liability before exercising DJA discretion over indemnity issues." (collecting cases)).

Here, Silva's negligence claim remains unresolved and there are outstanding issues of fact as to liability in the underlying case. Accordingly, it is premature for this Court to consider whether Accident Fund has a duty to indemnify other parties — a point Southwest itself concedes in its opposition. (*See* SW Silva Opp. 16 (stating it "is premature to require Accident Fund to indemnify MJM and Park Row")).

**CONCLUSION**

For the foregoing reasons, with respect to coverage issues regarding the Toribio Action, the Court DENIES Southwest's partial motion for summary judgment and GRANTS Underwriters' partial motion for summary judgment. The Clerk of Court is directed to terminate the motions pending at docket entries 68 and 82, and to remove Underwriters as a Third-Party Defendant from this case.

With respect to coverage issues regarding the Silva Action, the Court DENIES Accident Fund's partial motion for summary judgment, and GRANTS IN PART Southwest's partial motion for summary judgment insofar as the Court finds Accident Fund's primary and non-contributory duty to defend MJM and Park Row. The Clerk of Court is directed to terminate the motions pending at docket entries 73 and 77.

The parties remaining in the case are directed to submit a joint letter addressing the status of the Silva Action on the earlier of **July 31, 2024**, or two weeks after the date of any significant development in the Silva Action.

SO ORDERED.

Dated:      March 19, 2024
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

40